IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CARLOS GONZALEZ-SANCHEZ,<br><br>Defendant. | **ORDER DENYING MOTION TO DISMISS INDICTMENT**<br><br>Case No. 2:19-CR-342<br><br>Judge Clark Waddoups |

Before the court is Mr. Gonzalez-Sanchez's Motion to Dismiss the Indictment. (ECF No. 19.) As explained below, the court DENIES the Motion.

Factual and Procedural Background

Mr. Gonzalez-Sanchez is a citizen of Mexico. He reads, writes, and speaks Spanish. He does not speak English fluently.

Mr. Gonzalez-Sanchez was granted voluntary departure in 2015. (ECF No. 19 at 2; ECF No. 21 at 3.) On February 20, 2016, Mr. Gonzalez-Sanchez entered the United States from Mexico without being inspected by an immigration officer when he climbed over a border fence near the Calexico Border Patrol Station. (*See* ECF No. 21-1 at 3.) He then got into a silver Honda Accord with other aliens. (*See* ECF No. 21-1 at 3.) A border patrol agent pulled the vehicle over and determined that the vehicle "was being used to smuggle illegal aliens." (ECF No. 21-1 at 3.) Mr. Gonzalez-Sanchez was arrested and taken to the Calexico Border Patrol Station. (ECF No. 21-1 at 3.)

Border Patrol Agent Arturo Fernandez interviewed Mr. Gonzalez-Sanchez at the border patrol station. (*See* ECF No. 21-1 at 4.) In his report, Agent Fernandez indicated that Mr. Gonzalez-Sanchez "understood and was willing to answer questions and give a statement without the presence of an attorney." (ECF No. 21-1 at 4.) In his interview, Mr. Gonzalez-Sanchez provided Agent Fernandez with information about his family that only Mr. Gonzalez-Sanchez would know. (*See* ECF No. 21-1 at 9–10.) For example, he told the agent where his parents lived, where his daughter lived, that he had been previously apprehended by law enforcement for driving under the influence, and that he had previously appeared before an immigration judge. (ECF No. 21-1 at 10.) A transcript of this interview was printed in the English language and presented to Mr. Gonzalez-Sanchez. (*See* ECF No. 21-1 at 9–11.) He initialed each page of the interview. (ECF No. 21-1 at 9–11.) Additionally, his fingerprint appears on the first page of the interview. (ECF No. 21-1 at 9.)

Mr. Gonzalez was also presented with a form, in Spanish, notifying him of his rights. The "Notification of Rights" provides, in Spanish, that the recipient has the right to an immigration hearing. (*See* ECF No. 21-1 at 5 ("Usted tiene derecho a una audiencia ante el Tribunal de Inmigracion . . . .").) And the form also advises the recipient that he has the right to communicate with an attorney, who could represent him at an immigration hearing or advise him of his rights. (*See* ECF No. 21-1 at 5 ("Usted tiene derecho a comunicarse con un abogado . . . para que lo represente en la audiencia, o para responder a cualquier pregunta acerca de sus derechos conforme a la ley en los Estados Unidos.").) Mr. Gonzalez-Sanchez signed this form on "2/20/16." (ECF No. 21-1 at 5.)

Following the interview, Mr. Gonzalez-Sanchez was processed for Expedited Removal and removed to Mexico. Mr. Gonzalez-Sanchez then attempted to again enter the United States

on February 25, 2016, March 3, 2016, and March 6, 2016, but was apprehended and removed each time.

On September 4, 2019, the Government filed a single-count indictment charging Mr. Gonzalez-Sanchez with re-entry of a previously removed alien. (ECF No. 1 at 1.) The indictment alleges that Mr. Gonzalez-Sanchez was found in Utah on June 22, 2019, and that he reentered the United States without permission after having been previously removed. (*See* ECF No. 1.)

On September 10, 2019, Mr. Gonzalez-Sanchez appeared before a magistrate judge for his arraignment and detention hearing. Mr. Gonzalez-Sanchez entered a plea of not guilty to the charge. The court ordered him detained. The court also ordered the Probation Office to prepare a presentence investigation report by November 4, 2019. (ECF No. 7.)

On November 4, 2019, the assigned probation officer filed the presentence investigation report (PSR). The PSR indicates that Mr. Gonzalez-Sanchez has been detained since August 22, 2019. The PSR recommends a guideline range of zero to six months.

On December 10, 2019, Mr. Gonzalez-Sanchez appeared with counsel for a plea and sentence hearing. (ECF No. 18.) At this hearing, defense counsel indicated that Mr. Gonzalez-Sanchez wanted to file a motion to dismiss the indictment. (ECF No. 18.) The court set briefing schedule and set a date for a hearing on the motion.

On January 4, 2020, Mr. Gonzalez-Sanchez filed a Motion to Dismiss the Indictment. (ECF No. 19.) Mr. Gonzalez-Sanchez argues that he is entitled to collaterally attack his prior February 20, 2016, expedited removal order under 8 U.S.C. § 1326(d). He argues that the underlying removal proceedings were fundamentally unfair. This is so, he argues, because he suffered three distinct due process violations during the expedited removal proceedings, and as a result of these violations, he suffered prejudice. He argues that his due process rights were

violated when (1) he was denied the opportunity to consult with counsel; (2) when the immigration officials failed to comply with the agency regulations, and (3) when the immigration officials failed to advise him of his right to seek to withdraw his application for admission.[1]

In his opening brief, Mr. Gonzalez-Sanchez argued that he "was prejudiced because he had a plausible claim for relief" "in the form of withdrawing his application for admission." (ECF No. 19 at 13–14.) Mr. Gonzalez-Sanchez argued that "[t]o establish prejudice, a defendant 'need not prove that relief was probable'; rather 'he must prove only the *plausibility* of relief.'" (ECF No. 19 at 14 (quoting *United States v. Raya-Vaca*, 771 F.3d 1195, 1207 (9th Cir. 2014) (emphasis in original).)

On January 24, 2020, the Government filed its Opposition to Mr. Gonzalez-Sanchez's Motion. (ECF No. 21.) The Government addressed each of Mr. Gonzalez-Sanchez's alleged due process violations. The Government argued that, contrary to Mr. Gonzalez-Sanchez's representation, he was advised of his right to consult with counsel. (*See* ECF No. 21 at 7–9.) It also argued that he "was advised of the charge and penalties regarding his removal," so his second alleged due process argument fails. (*See* ECF No. 21 at 11.) The Government further argued that Mr. Gonzalez-Sanchez's third alleged due process violation fails because he did not have a constitutional right to be informed of possible discretionary relief. (*See* ECF No. 21 at 11.)

The Government also addressed Mr. Gonzalez-Sanchez's arguments regarding prejudice. The Government argued that Mr. Gonzalez-Sanchez's reliance on the Ninth Circuit's plausibility standard "is error" "in the Tenth Circuit." (ECF No. 21 at 12.) The Government noted that the

---

[1] Mr. Gonzalez-Sanchez was deemed an applicant for admission under 8 U.S.C. § 1225(a)(1) upon his arrival in the United States. *See* 8 U.S.C. § 1225(a)(1) ("[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . whether or not at a designated port of arrival . . . . . . shall be deemed for purposes of this chapter an applicant for admission.").

4

Tenth Circuit, on rehearing *en banc* in *Aguirre-Tello*, adopted a "reasonable likelihood" standard. (ECF No. 21 at 12 (citing *United States v. Aguirre-Tello*, 353 F.3d 1199, 1207–09).) The Government also noted that the Tenth Circuit in *Aguirre-Tello* had specifically rejected the Ninth Circuit's plausibility standard. (ECF No. 21 at 13.)

The Government also attached a declaration of Border Patrol Agent Arturo Fernandez, the agent who conducted the interview during Mr. Gonzalez-Sanchez's expedited removal proceeding. (ECF No. 21-2.) Agent Fernandez is fluent in both English and Spanish. (ECF No. 21-2 at 3.) In his declaration, Agent Fernandez admitted that he did not recall the specific details of his encounter with Mr. Gonzalez-Sanchez. (ECF No. 21-2 at 3.) But he provided that he had "no reason to believe that [he] deviated from [his] standard procedures in conducting expedited removals" while he was "assigned to the Calexico Border Patrol Station." (ECF No. 21-2 at 3.) Among his practices when conducting expedited removals, Agent Fernandez would "read[] or translat[e] the introductory paragraphs of the Record of Sworn Statement . . . ." (ECF No. 21-1 at 9.) He would also "ask the individual to review the Record of Sworn Statement . . . to verify if the information in the document was correct by initialing each page and putting his of her fingerprint on the last page." (ECF No. 21-2 at 3.)

On January 28, 2020, Mr. Gonzalez-Sanchez submitted his Reply in support of his motion. (ECF No. 22.) The Reply contained legal argument and also mentioned the possibility of factual disputes between the Government's version of events and Mr. Gonzalez-Sanchez's. (*See* ECF No. 22 at 1 ("Counsel will meet with Mr. Gonzalez-Sanchez before the hearing and will [determine] what factual disputes remain after reading Agent Fernandez's declaration." (ECF No. 22 at 1.) The court addresses the factual disputes before addressing the legal argument contained in the Reply.

After submitting his Reply, Mr. Gonzalez-Sanchez submitted a written proffer, representing, among other things, that he would testify under oath that he "does not recall ever being told that he had a right to an immigration hearing with a judge or the right to contact an attorney." (ECF No. 23 at 2.) He also represented that "[h]e was told by [an] officer that he needed to sign, initial, and fingerprint various documents." (ECF No. 23 at 2.) He also represented that "[t]he officer told him [signing the forms was] necessary for him to be deported, but he was not given the chance to read them carefully." (ECF No. 23 at 2.)

The court held a hearing on January 28, 2020. With the assistance of a Spanish interpreter, Mr. Gonzalez-Sanchez testified under oath. He testified that he reads, writes, and speaks Spanish. On cross-examination the Government introduced the form containing Mr. Gonzalez-Sanchez's signature, that advises the reader in Spanish, of his right to an attorney and a hearing before an immigration court. Despite the form containing his signature, Mr. Gonzalez-Sanchez testified that he did not remember reading the notification of rights. Mr. Gonzalez-Sanchez also testified that he did not remember Agent Fernandez ever telling him that he could avoid deportation by withdrawing his request to be in the United States.

Legal Background

"A prosecution for illegal reentry under § 1326(a) generally requires the government to prove two things: (1) that the alien 'has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding'; and (2) that the alien thereafter has 'enter[ed], attempt[ed] to enter, or is at any time found in, the United States.'" *United States v. Adame-Orozco*, 607 F.3d 647, 650–51 (10th Cir. 2010).

Here, the Government relies on Mr. Gonzalez-Sanchez's prior 2016 expedited removal to

prove the first element of the charged § 1326(a) offense. And as discussed above, Mr. Gonzalez-Sanchez seeks to collaterally attack that 2016 expedited removal proceeding under 8 U.S.C. § 1326(d).

But Congress, when it passed 8 U.S.C. § 1225(b)(1)(D), "provided that this § 1326(d) mechanism allowing a § 1326(a) defendant to challenge his prior removal expressly does not apply to expedited removals." *United States v. Gonzalez-Fierro*, No. 18-2168, 2020 WL 549009, at *3 (10th Cir. Feb. 4, 2020). Congress attempted to divest courts of jurisdiction to hear collateral attacks on expedited removal orders. *See* 8 U.S.C. § 1225(b)(1)(D) ("In any action brought against an alien under . . . section 1326 of this title, the court shall not have **jurisdiction** to hear any claim attacking the validity of an order of [expedited] removal entered under subparagraph (A)(i) or (B)(iii).") (bold added)). But the Tenth Circuit recently held that § 1225(b)(1)(D) is unconstitutional because "[d]ue process requires that, notwithstanding 8 U.S.C. § 1225(b)(1)(D), federal courts have jurisdiction to review the fundamental fairness of an expedited removal before the United States can use it to prove a § 1326(a) charge." *Gonzalez-Fierro*, 2020 WL 549009, at *3. Because the Tenth Circuit has held that 8 U.S.C. § 1225(b)(1)(D) is unconstitutional, the court has jurisdiction to hear Mr. Gonzalez-Sanchez's § 1326(d) challenge to his underlying expedited removal proceeding.

Section 1326(d) "permits [a] defendant-alien the chance to mount a collateral attack against a prior deportation order in response to an illegal reentry prosecution—but only in certain circumstances." *Id*. at 651. "A defendant-alien may challenge the legality of a deportation order if, but only if, he can show that:"

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly

7

deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

*Adame-Orozco*, 607 F.3d at 651 (citing 8 U.S.C. § 1326(d)).

"The defendant has the burden of showing that the underlying deportation hearing was fundamentally unfair . . . ." *United States v. Aguirre-Tello*, 353 F.3d 1199, 1204 (10th Cir. 2004). In order to establish fundamental unfairness, "a defendant must show that (1) his due process rights were violated and (2) he suffered prejudice as a result of the defects." *United States v. Mendias-Chavez*, 89 F. App'x 184, 186 (10th Cir. 2004) (citing *United States v. Aguirre-Tello*, 353 F.3d 1199, 1200–01)).

<u>Analysis</u>

Mr. Gonzalez-Sanchez's Motion fails because he cannot show that the entry of the deportation order was fundamentally unfair. This is because (I) he has not shown that his due process rights were violated and (II) he has not shown that he suffered prejudice as a result of the alleged defects.

I. <u>Mr. Gonzalez-Sanchez Has Not Shown that His Due Process Rights Were Violated.</u>

Mr. Gonzalez-Sanchez argues that "the expedited removal order" violated his right to due process in three distinct ways: (A) he alleges that he "was deprived the opportunity to consult with counsel;" (B) he alleges "the agents did not follow the minimal but required procedures provided in the regulations for expedited removal proceedings;" and (C) he alleges he was "not advised he could avoid an order of removal by requesting permission to withdraw his application for admission." (ECF No. 19 at 6.)

A. <u>The Government Has Demonstrated that Mr. Gonzalez-Sanchez Was Advised of His Right to Obtain Counsel</u>

Mr. Gonzalez-Sanchez testified under oath that he does not remember being advised of his right to counsel. Based on the record evidence, the court rejects any claim that he was not advised of his right to counsel. Mr. Gonzalez-Sanchez received a form containing a "Notification of Rights" box. (ECF No. 21-1 at 5.) As discussed above, this Notification of Rights box advised Mr. Gonzalez-Sanchez of his right to counsel and his right to a hearing. Immediately below that box is a "Resolution Request" form. (*See* ECF No. 21-1 at 5.) The Resolution Request box contains Mr. Gonzalez-Sanchez's signature. Mr. Gonzalez-Sanchez cannot meet his burden of establishing a due process violation based on a failure of being advised of counsel because the record evidence establishes that he was advised of counsel. Mr. Gonzalez-Sanchez's first alleged due process violation fails.

B. <u>Mr. Gonzalez-Sanchez Cannot Meet His Burden of Establishing that He Suffered a Due Process Violation When the Immigration Officials "Failed to Comply with Agency Regulations"</u>

Mr. Gonzalez-Sanchez alleges that officials "failed to advise [him] of the charge against him and to read him the sworn statement they prepared . . . in violation of the record-keeping requirements of 8 C.F.R. § 235.3(b)(2)(i)." (ECF No. 19 at 7.) That regulation provides, in relevant part, that

> The examining immigration officer shall read (or have read) to the alien all information contained on Form I–867A. Following questioning and recording of the alien's statement regarding identity, alienage, and inadmissibility, the examining immigration officer shall record the alien's response to the questions contained on Form I–867B, and have the alien read (or have read to him or her) the statement, and the alien shall sign and initial each page of the statement and each correction. The examining immigration officer shall advise the alien of the charges against him or her on Form I–860, Notice and Order of Expedited Removal, and the alien shall be given an opportunity to respond to those charges in the sworn statement.

8 C.F.R. § 235.3(b)(2)(i). The Ninth Circuit has held that, during an expedited removal proceeding, an alien has a due process right to have an immigration officer advise him of the charge against him and to read to him, or permit him to read, the sworn statement the officer prepared. (*See United States v. Raya-Vaca*, 771 F.3d 1195, 1204 (9th Cir. 2014) ("The regulations instructing the immigration officer to advise an alien of the charge against him and to permit the alien to read or be read the sworn statement prepared in his name protect those fundamental due process rights: notice of the charge the alien faces and the alien's opportunity to respond to that charge.").) Because the Government makes no argument that the Tenth Circuit would hold differently than the Ninth Circuit, this court assumes without deciding that an alien has a due process right during an expedited removal proceeding to have an immigration officer advise him of the charge against him and to read to him, or permit him to read, the sworn statement the officer prepared.

"The defendant has the burden of showing that the underlying deportation hearing was fundamentally unfair . . . ." *United States v. Aguirre-Tello*, 353 F.3d 1199, 1204 (10th Cir. 2004). Mr. Gonzalez-Sanchez cannot meet his burden of demonstrating that he suffered a due process violation. Agent Fernandez provided in his Declaration that it is his standard practice to read or translate the introductory paragraphs of the Record of Sworn Statement to aliens in expedited removal proceedings. (*See* ECF No. 21-2 at 3.) Those paragraphs provide, in relevant part, that "[y]ou do not appear to be admissible or to have the required legal papers authorizing your admission into the United States. This may result in your being denied admission and immediately returned to your home country without a hearing." (ECF No. 21-1 at 9.) The court agrees with the Government that the record indicates that Mr. Gonzalez-Sanchez was advised of the charge and potential penalties against him.

At oral argument, defense counsel also argued that Mr. Gonzalez-Sanchez suffered a due process violation because Agent Fernandez did not review the sworn statement with him. But Mr. Gonzalez-Sanchez and his counsel admitted that the information contained in the sworn statement is accurate. The only evidence supporting Mr. Gonzalez-Sanchez's position is his testimony that he does not remember Agent Fernandez having reviewed the sworn statement with him. This evidence is not sufficient for him to meet his burden of establishing a due process violation.

Despite record evidence to the contrary, Mr. Gonzalez-Sanchez similarly testified that he did not remember being advised of counsel. Considering Mr. Gonzalez-Sanchez's testimony as a whole, his inability to remember being read the sworn statement, alone, is not sufficient evidence that he suffered a due process violation. His argument fails.

### C. Mr. Gonzalez-Sanchez Cannot Allege a Due Process Violation Based on a Failure to Advise Him of His "Right to Withdraw His Application for Admission"

Mr. Gonzalez-Sanchez argues that if he "was not to be given even the bare opportunity to consult with counsel, then the immigration officers should have advised him of his statutory right to seek permission to withdraw his application for admission." (ECF No. 19 at 12.)

Under 8 U.S.C. § 1225(a)(1), "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . whether or not at a designated port of arrival . . . . . . shall be deemed for purposes of this chapter an applicant for admission." Further, 8 U.S.C. § 1225(a)(4) provides that "[a]n alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States."

In response to Mr. Gonzalez-Sanchez's argument, the Government argues that the "advisement of" the type that Mr. Gonzalez-Sanchez alleges that he was entitled to is

"considered 'discretionary relief.'" (*See* ECF No. 21 at 11.) The Government argues that Mr. Gonzalez-Sanchez's argument fails because "[t]he Tenth Circuit . . . holds that an alien does not have a constitutional right to be informed of 'discretionary relief' from deportation that might be available to him." (ECF No. 21 at 11.) The Government has cited non-binding authority that directly supports the proposition that an immigration officer's failure to inform an alien of his option to withdraw an application for admission constitutes discretionary relief. *See United States v. Barragan-Camarillo*, 460 F. App'x 637, 639 (9th Cir. 2011) ("The immigration officer's failure to inform Barragan–Camarillo of the options of withdrawal of an application for admission or voluntary departure was not prejudicial because both forms of relief are discretionary . . . .").) The Government's position that this form of relief constitutes "discretionary relief" is well-founded because the statute itself makes clear that it is a discretionary form of relief. *See* 8 U.S.C. § 1225(a)(4) ("[a]n alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States.")).

The Government is also correct that, in the Tenth Circuit, an alien-defendant may not base an alleged due process violation on an immigration judge's failure to advise him of potential discretionary relief. *See United States v. Mendias-Chavez*, 89 F. App'x 184, 186 (10th Cir. 2004).[2]

In Reply, Mr. Gonzalez-Sanchez argues that the Tenth Circuit has only ever held that an immigration judge is not required to advise an alien in removal proceedings of discretionary

---

[2] "Mendias–Chavez contends that the Immigration Judge's failure to advise him of his right to discretionary relief from deportation deprived him of his right to due process, thereby rendering his deportation fundamentally unfair. However, we rejected this exact argument in *Aguirre–Tello,* where we held that a deportable alien does not have a constitutional right to be informed of discretionary relief that might be available to him."

12

relief. (*See* ECF No. 22 at 2.) He argues that "[w]hatever obligation an immigration judge in removal proceedings has to advise an alien about § 212(c) relief, the duties of a field agent processing an alien found near the border for expedited removal are materially different, so *Aguirre-Tello* doesn't control here." (ECF No. 22 at 3.)

Neither party has provided the court with any controlling authority directly resolving the issue. But the Tenth Circuit has provided, more generally, that it "agree[s] with the majority of other circuits which have addressed the issue and concluded that there is no constitutional right to be informed of the existence of discretionary relief for which a potential deportee might be eligible." *Aguirre-Tello*, 353 F.3d at 1205. At oral argument, the Government argued, in light of *Aguirre-Tello*, that there was no principled reason for this court to conclude that an alien has a constitutional right to be informed—by a field immigration officer—of discretionary relief from deportation if he does not also have that right to be informed by an immigration judge. The court agrees. Based on the guidance in *Aguirre-Tello*, this court holds that an alien in expedited removal proceedings has no constitutional right to be informed of discretionary relief from deportation.

Mr. Gonzalez-Sanchez cannot be said to have suffered a due process violation because he did not have a constitutional right to be informed of discretionary relief.

II.     Mr. Gonzalez-Sanchez Cannot Meet His Burden of Showing that he was Prejudiced

In addition to demonstrating a due process violation, in order to meet his burden of establishing that the deportation proceeding was fundamentally unfair, Mr. Gonzalez-Sanchez must also show that he suffered prejudice. To demonstrate prejudice in the Tenth Circuit, an alien must demonstrate a "reasonable likelihood that, but for the errors complained of, he would not have been deported." *United States v. Aguirre-Tello*, 353 F.3d 1199, 1208 (10th Cir. 2004).

Mr. Gonzalez-Sanchez correctly identified the governing standard for the first time in his Reply.

He argues that he can demonstrate a reasonable likelihood that he would not have been deported because there is a reasonable likelihood that he would have been permitted to withdraw his application for admission. As discussed above, informing an alien of his option to withdraw an application for admission constitutes discretionary relief. "[I]n a footnote," the Tenth Circuit in "*Aguirre-Tello* noted 'the inherent difficulty in demonstrating prejudice from the denial of eligibility for discretionary relief.'" *United States v. Almanza-Vigil*, 912 F.3d 1310, 1323 (10th Cir. 2019). But the Tenth Circuit in *Aguirre-Tello* nevertheless explored the likelihood that the alien in that case would receive discretionary relief. *See Aguirre-Tello*, 353 F.3d at 1209–10. "Accordingly, [this court] will, too." *Almanza-Vigil*, 912 F.3d at 1324.

Mr. Gonzalez-Sanchez argues that an Inspector's Field Manual instructs immigration officers to consider six factors when determining whether to permit an alien to withdraw his application for admission. (*See* ECF No. 19 at 14.) The six factors are:

1. The seriousness of the immigration violation;
2. Previous findings of inadmissibility against the alien;
3. Intent on the part of the alien to violate the law;
4. Ability to easily overcome the ground of inadmissibility (i.e. lack of documents);
5. Age or poor health of the alien; and
6. Other humanitarian or public interest considerations.

(ECF No. 19 at 14 (citing Field Manual § 17.2(a).) At oral argument, the Government argued that all six factors weigh against Mr. Gonzalez-Sanchez. The court agrees that at least four of the factors weigh against Mr. Gonzalez-Sanchez. First, as the Government argued, Mr. Gonzalez-Sanchez was previously determined to be inadmissible in September 2015. Second, it is clear that Mr. Gonzalez-Sanchez intended to violate the law when he climbed a fence in order to enter

the United States. Third, the court agrees with the Government that Mr. Gonzalez-Sanchez would not be able to easily overcome the ground for inadmissibility. Fourth, the court agrees with the Government that Mr. Gonzalez-Sanchez's good health weighs against him. Based on the foregoing, Mr. Gonzalez-Sanchez cannot meet his burden of demonstrating that it is reasonably likely that he would have been permitted to withdraw his application for admission. He therefore cannot demonstrate that he was prejudiced.

## Conclusion

Mr. Gonzalez-Sanchez can only collaterally attack his prior removal proceeding if he can demonstrate, among other things, that it was fundamentally unfair. He has failed to demonstrate that the underlying removal proceeding was fundamentally unfair because he has failed to demonstrate that his due process rights were violated. This alone is dispositive. But he also failed to demonstrate that he suffered prejudice. Because he has failed to demonstrate both a due process violation and prejudice, he has not shown that his underlying proceeding was fundamentally unfair. He is not entitled to collaterally challenge the underlying removal proceedings under 8 U.S.C. § 1326(d). Mr. Gonzalez-Sanchez's Motion to Dismiss, (ECF No. 19) is DENIED.

Dated this 18th day of February, 2020.

BY THE COURT:

_____
CLARK WADDOUPS
United States District Court Judge